# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| FLEET CONNECT SOLUTIONS LLC, | Civil Action No. 3:25-cv-##### |
|---|---|
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| WERNER ENTERPRISES, INC. | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this Complaint against Werner Enterprises, Inc. ("Werner" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 1 | 6,429,810 | Integrated Air Logistics System | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6429810 |
| 2 | 7,058,040 | Channel Interference Reduction | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |
| 3 | 7,260,153 | Multi Input Multi Output Wireless Communication Method And Apparatus Providing Extended Range And Extended Rate Across Imperfectly Estimated Channels | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |
| 4 | 7,596,391 | System And Method For Wireless Communication Between A Vehicle and A | https://image-ppubs.uspto.gov/dirsearch-public/print/pdfRedirectDownload/7 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| | | Mobile Unit | [596391?requestToken=eyJzdWIiOiJkNWUyMzAxZS05ZDI0LTQ2MzgtYjZjZC0wMWZmM2EyYTIzNjYiLCJ2ZXIiOiJhMzVkOGRhNi03ZGU0LTRiMGQtODE1Zi1hZjE0MjhiYmU2OGQiLCJleHAiOjB9](#) |
| 5 | 7,656,845 | Channel Interface Reduction | [https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7656845](#) |
| 6 | 7,742,388 | Packet Generation Systems And Methods | [https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388](#) |

2.   Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.   Plaintiff Fleet Connect Solutions LLC is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.   Defendant Werner Enterprises, Inc. is a corporation organized under the laws of the State of Nebraska with its principal place of business located at 14507 Frontier Road, Omaha, NE 68138.

5.   Defendant's registered agent for service is Nathan Meisgeier, 14507 Frontier Road, Omaha, Nebraska 68138.

## JURISDICTION AND VENUE

6.   Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7.   This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.   Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and

has committed acts of patent infringement in the District from those regular and established places of business. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9. Defendant offers products and services, including through the use of Accused Products, and conducts business in this District.

10. Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District; (iii) having an interest in, using or possessing real property in Texas and this District; (iv) and having and keeping personal property in Texas and in this District.

11. Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

On information and belief, Defendant owns, operates, manages, conducts business, and directs and controls the operations and employees of facilities at locations in this District, including, but not limited to, facilities at the following address: 8701 Peterbilt Ave, Dallas, TX 75241. *See Dallas, TX*, WERNER FLEET SALES (last visited Jan. 21, 2025), https://www.wernerfleetsales.com/locations/dallas-location/; *see also Careers*, WERNER (last visited Jan. 21, 2025),

https://werner.wd1.myworkdayjobs.com/Werner?locations=8ed16651bdc90124d4bc91ed8200c12e (listing four (4) job openings currently available in Dallas, TX).

12. In addition to conducting this business, Defendant employs a number of individuals within this District. These individuals' employment with Defendant is conditioned upon and based on their residence and continued residence within the District to further the specific infringing business activities of Defendant within the District. *See, e.g.*, *Careers*, WERNER (last visited Jan. 21, 2025), https://werner.wd1.myworkdayjobs.com/en-US/Werner/details/Sales---Admissions-Advisor_JR20715?locations=8ed16651bdc90124d4bc91ed8200c12e (noting that the Sales/Admission Advisor position in the Dallas office is "Onsite")

13. Defendant's business specifically depends on employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., being physically present at places in the District, and Defendant affirmatively acted to make permanent operations within this District. *See In re: Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017); *In re Cordis Corp.*, 769 F.2d 733, 736 (Fed. Cir. 1985).

14. Defendant commits acts of infringement from this District, including, but not limited to, using, installing, testing of the Accused Products, selling and offering to sell the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

15. Defendant instructs its employees, agents, and contractors on how to install and use the Accused Products.

## THE ACCUSED PRODUCTS

16. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

17. Defendant uses, causes to be used, sells, offers for sale, imports, provides, supplies, or distributes one or more fleet management tracking solutions, including, but not limited to, the

Platform Science PS Asset Tracking, PS Fleets, PS Telematics, PS Analytics, PS Vehicle Tracking, such as the Connected Vehicle Display (CVD) (ELD device), In-Vehicle Display Tablets (ELD tablets), and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

18. For these reasons and the additional reasons detailed below and the claim charts attached hereto, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 6,429,810**

19. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

20. The USPTO duly issued U.S. Patent No. 6,429,810 (the "'810 patent") on August 6, 2002, after full and fair examination of Application No. 09/774,547 which was filed January 31, 2001.

21. Fleet Connect owns all substantial rights, interest, and title in and to the '810 patent, including the sole and exclusive right to prosecute this action and enforce the '810 patent against infringers and to collect damages for all relevant times.

22. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '810 patent.

23. The written description of the '810 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

24. Defendant has directly infringed the claims of the '810 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

25. For instance, as just one example of infringement, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '810 patent, as detailed in the claim chart attached hereto as **Exhibit A**.

26. For example, as detailed in Exhibit A, Defendant, when using the Accused Products, performed a method of providing container status information to a user. *See* Exhibit A. The method included attaching an electronic communications unit to a shipping container; generating a transaction identification code, wherein said transaction identification code is specific to said shipping container and specific to at least one user transaction; initiating a status inquiry utilizing said transaction identification code, wherein said user performs said initiating step; receiving said status inquiry by a ground communications system; transmitting said status inquiry to said electronic communications unit by said ground communications system; obtaining a status information response by said electronic communication unit; transmitting said status information response to said ground communications system by said electronic communications unit; and forwarding said status information response to said user by said ground communications system. *Id.*

27. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 7,058,040**

28. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

29. The USPTO duly issued U.S. Patent No. 7,058,040 (hereinafter, the "'040 patent") on June 6, 2006 after full and fair examination of Application No. 09/962.,718 which was filed on September 21. 2001.

30. Fleet Connect owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

31. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '040 patent.

32. The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

33. Defendant has directly infringed the claims of the '040 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

34. For instance, as just one example of infringement, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent, as detailed in the claim chart attached hereto as **Exhibit B**.

35. For example, as detailed in Exhibit B, Defendant when using the Accused Products,

performed a method for data transmission over first and second media that overlap in frequency. *See* Exhibit B. The method includes computing one or more time division multiple access ("TDMA") time-slot channels to be shared between the first and second media for data transmission; allocating one or more time-slot channels to the first medium for data transmission; allocating one or more of the remaining time-slot channels to the second medium for data transmission; and dynamically adjusting a number of timeslot channels assigned to one of the first and second media during the data transmission to remain within limits of a desired level of service. *Id.*

36. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,260,153

37. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

38. The USPTO duly issued U.S. Patent No. 7,260,153 (hereinafter, the "'153 patent") on August 21, 2007 after full and fair examination of Application No. 10/423,447 which was filed on April 28, 2003.

39. Fleet Connect owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

40. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the

'153 patent.

41.     The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

42.     Defendant has directly infringed, and continues to directly infringe, the claims of the '153 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

43.     For instance, as just one example of infringement, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent, as detailed in the claim chart attached hereto as **Exhibit C**.

44.     For example, as detailed in Exhibit C, Defendant, using the Accused Products, performed a method for evaluating a channel of a multiple-input multiple-output ("MIMO") wireless communication system allowing two or more communication devices with multiple radiating elements to transmit parallel data sub-streams which defines a channel matrix metric of cross-talk signal-to-noise ("SNR") for the subs-streams, estimates the channel matrix metric, performs a singular value decomposition ("SVD") of the channel matrix metric estimate to calculate estimated channel singular values, and using the channel matrix metric and estimated channel singular values to calculate a crosstalk measure for the sub-streams.  *See* Exhibit C.

45.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest

and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,596,391

46. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

47. The USPTO duly issued U.S. Patent No. 7,596,391 (hereinafter, the "'391 patent") on September 29, 2009 after full and fair examination by the USPTO of Application No. 12/389,252 which was filed on February 19, 2009. A Certificate of Correction was issued on June 4, 2013.

48. Fleet Connect owns all substantial rights, interest, and title in and to the '391 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

49. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '391 patent.

50. The written description of the '391 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

51. Defendant has directly infringed the claims of the '391 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

52. For instance, as just one example of infringement, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '391 patent, as detailed

in the claim chart attached hereto as **Exhibit D**.

53. For example, as detailed in Exhibit D, Defendant, using the Accused Products, performed a method of wireless communication between a mobile unit and a vehicle comprising a transceiver, the method comprising: receiving a signal by the mobile unit comprising a microprocessor, the signal transmitted from the vehicle comprising the transceiver, the signal comprising a security field and a unique identifier, advising that the mobile unit is within range of the vehicle: determining by the microprocessor if the signal is authorized, the determining comprising parsing the signal to determine the security field and the unique identifier; inputting a voice-activated input and/or a manual input from a user of the mobile unit via an audio-visual inter face associated with the mobile unit, the voice-activated input and/or the manual input is associated with a control instruction; assembling, by the microprocessor, at least one packet of a communication comprising the control instruction; transmitting the at least one packet to the vehicle comprising the transceiver; displaying that the control instruction was input by the user, and storing the communication in a communication log.  *See* Exhibit D.

54. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 7,656,845

55. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

56. The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2, 2010 after full and fair examination of Application No. 11/402,172 which was filed on April 11,

2006. A Certificate of Correction was issued on November 30, 2010.

57. Fleet Connect owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce the '845 patent against infringers and to collect damages for all relevant times.

58. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '845 patent.

59. The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

60. Defendant has directly infringed, and continues to directly infringe, the claims of the '845 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

61. For instance, as just one example of infringement, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '845 patent, as detailed in the claim chart attached hereto as **Exhibit E**.

62. For example, as detailed in Exhibit E, the Accused Products perform a method comprising: a base station allocating at least one of a plurality of data channels to a first medium for data transmission via a wireless device; the base station allocating at least one remaining data channel of the plurality of data channels to a second medium for data transmission via the wireless device; and the base station dynamically adjusting, during data transmission, a number of the data

channels assigned to one of the first and second media to remain within limits of a desired level of service. *See* Exhibit E.

63. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,742,388

64. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

65. The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665 which was filed July 20, 2005.

66. Fleet Connect owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

67. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

68. The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

69. Defendant has directly infringed, and continues to directly infringe, the claims of

the '388 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

70. For instance, as just one example of infringement, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent, as detailed in the claim chart attached hereto as **Exhibit F**.

71. For example, as detailed in Exhibit F, Defendant, using the Accused Products, performs a method comprising: generating a packet with a size corresponding to a protocol used for a network transmission, wherein the packet comprises a preamble having a first training symbol and a second training symbol; increasing the size of the packet by adding Subcarriers to the second training symbol of the packet to produce an extended packet, wherein a quantity of Subcarriers of the second training symbol is greater than a quantity of Subcarriers of the first training symbol; and transmitting the extended packet from an antenna. *See* Exhibit F.

72. Upon information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Fleet Connect's patent rights.

73. Defendant willfully blinded itself to the existence of the '388 patent and Defendant's infringement, but Defendant had actual knowledge of the '388 patent since at least the date of receiving the original complaint in this action.

74. Since at least the date of receiving the original complaint in this action, Defendant has indirectly infringed and continues to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent. Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent

by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1. *See* Exhibit F.

75. Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent. Defendant's inducement is ongoing. *See* Exhibit F.

76. Since at least the date of receiving the original complaint in this action, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '388 patent. Defendant has contributed and continues to contribute to the direct infringement of the '388 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See* Exhibit F.

77. Defendant's actions are at least objectively reckless as to the risk of infringing a

valid patent and this objective risk was either known or should have been known by Defendant.

78.     Defendant's infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

79.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

80.     Fleet Connect has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Fleet Connect has and will continue to suffer this harm by virtue of Defendant's infringement of the '388 patent.  Defendant's actions have interfered with and will interfere with Fleet Connect's ability to license technology.  The balance of hardships favors Fleet Connect's ability to commercialize its own ideas and technology. The public interest in allowing Fleet Connect to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

81.     Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

82.     Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

   a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

   b. A permanent injunction enjoining Defendant and its officers, directors, agents,

      servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '388 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '388 patent by such entities;

c.   Judgment that Defendant account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

d.   Judgment that Defendant's infringements of the '388 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

<table>
<tr><td>Dated: January 29, 2025</td><td>Respectfully submitted,<br><br>*/s/ Russell E. Jumper*<br><br>J.P. B. Vogel<br>Texas State Bar No. 24039910<br>jpvogel@grayreed.com<br>Russell E. Jumper<br>Texas Bar No. 24050168<br>rjumper@grayreed.com<br>**GRAY REED & MCGRAW LLP**<br>1601 Elm Street, Suite 4600<br>Dallas, Texas 75201<br>(469) 320-6062 (Telephone)<br>(469) 320-6856 (Telefax)<br><br>By: */s/ C. Matthew Rozier*<br><br>C. Matthew Rozier (CO 46854)*<br>**ROZIER HARDT MCDONOUGH PLLC**<br>1500 K Street, 2nd Floor<br>Washington, District of Columbia 20005<br>Telephone: (404) 779-5305; (202) 316-1591<br>Email: matt@rhmtrial.com<br><br>James F. McDonough, III (GA 117088)*<br>**ROZIER HARDT MCDONOUGH PLLC**<br>659 Auburn Avenue NE, Unit 254<br>Atlanta, Georgia 30312<br>Telephone: (404) 564-1866, -1863, -1862<br>Email: jim@rhmtrial.com<br><br>Jonathan Hardt (TX 24039906)*<br>**ROZIER HARDT MCDONOUGH PLLC**<br>712 W. 14th Street, Suite A<br>Austin, Texas 78701<br>Telephone: (210) 289-7541; (737) 295-0876<br>Email: hardt@rhmtrial.com<br>Email: danielle@rhmtrial.com</td></tr>
</table>

*Attorneys for Plaintiff FLEET CONNECT SOLUTIONS LLC*

*Admitted to the Eastern District of Texas

**Exhibits**
    A.   Claim Chart for U.S. Patent 6,429,810
    B.   Claim Chart for U.S. Patent 7,058,040
    C.   Claim Chart for U.S. Patent 7,260,153
    D.   Claim Chart for U.S. Patent 7,596,391
    E.   Claim Chart for U.S. Patent 7,656,845
    F.   Claim Chart for U.S. Patent 7,742,388